**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

ELBERT L. GRIFFIN                                                                                              PLAINTIFF

v.                                                  No. 5:06CV00214 JLH

TYSON FOODS, INC.                                                                                          DEFENDANT

**OPINION AND ORDER**

Elbert L. Griffin brought this suit against Tyson Foods, Inc., alleging sex discrimination and sexual harassment in violation of Title VII and the Arkansas Civil Rights Act as well as several other state-law claims. Tyson filed a motion for summary judgment on all of Griffin's claims. In his response to that motion, Griffin agreed with Tyson that all his state-law claims, with the exception of those under the Arkansas Civil Rights Act, should be dismissed. Griffin disagreed with Tyson that summary judgment is appropriate for his claims of sex discrimination and sexual harassment. For the following reasons, summary judgment is granted in favor of Tyson on all of Griffin's claims.

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis of its motion and identifying the portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Group Health Plan, Inc.*

*v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003).  When the moving party has carried its burden under Rule 56(c), "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)).  The nonmoving party sustains this burden by showing that "there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552.  In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment.  *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001) (citing *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)).  If the evidence would allow a reasonable jury to return a verdict for the nonmoving party, summary judgment should be denied.  *Derickson v. Fid. Life Ass'n*, 77 F.3d 263, 264 (8th Cir. 1996) (citing *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).

The Eighth Circuit has said "that 'summary judgment seldom should be granted in discrimination cases where inferences are often the basis of the claim.'"  *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004) (quoting *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)); *see also Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000).  *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

**I.**

The following facts are undisputed. Griffin was a line supervisor at Tyson's poultry processing plant in Pine Bluff. Tyson had a harassment and discrimination policy in place prohibiting any form of harassment, including sexual harassment. Griffin received training on the policy and agreed to abide by it. The policy provides that if an employee witnesses or experiences harassment or discrimination, the employee must report it immediately. Tyson operates a toll-free "Tell Tyson First Line" that an employee can contact to report harassment or discrimination at any time. Once reported, a human resources representative is assigned to investigate and resolve the complaint as quickly as possible. If an employee is not satisfied with the results of the investigation, he can appeal the determination to another level of management, and an additional investigation will be conducted.

On January 20, 2006, TW, a female team member on a production line supervised by Griffin, complained of sexual harassment by Griffin to Tyson's human resources department. Kendra Bishop-Tatum, a shift human resources manager at Tyson, investigated TW's complaint. Griffin was placed on unpaid suspension pending the completion of the investigation. During the course of her investigation, Bishop-Tatum interviewed TW, eleven of Griffin's team members, one supervisor from another line, and Griffin. According to Bishop-Tatum's investigative notes and interviews, some team members corroborated TW's allegations. Many more team members stated that they did not witness any inappropriate conduct by Griffin. Others stated that, while they had no knowledge of the specific instances of which TW complained, they had witnessed Griffin make sexually-suggestive comments. Still others stated that sexual banter was common on the line and

originated from the female team members.  Griffin asserted that TW's allegations were false and denied making any other inappropriate comments.

After the conclusion of Bishop-Tatum's investigation, Griffin was terminated on February 3, 2006.  Griffin did not appeal Tyson's decision to terminate him, although he was informed that he had a right to appeal the decision.  Following his termination, Griffin filed a charge of discrimination with the Equal Employment Opportunity Commission alleging sex discrimination.  Griffin received his right to sue letter on May 12, 2006, and on August 14, 2006, filed this lawsuit.

## II.

**A.     Disparate Treatment**

Griffin asserts that his termination was the result of unlawful sex discrimination.  Under Title VII, an employer cannot discharge or otherwise "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).  The Arkansas Civil Rights Act guarantees "[t]he right of an otherwise qualified person to be free from discrimination because of . . . gender," including "[t]he right to obtain and hold employment without discrimination."  ARK. CODE ANN. § 16-123-107(a)(1).  "The Arkansas Supreme Court looks to decisions interpreting the federal civil rights laws in analyzing gender discrimination claims under the Arkansas Civil Rights Act . . . ."  *Crone v. United Parcel Serv., Inc.*, 301 F.3d 942, 945 (8th Cir. 2002) (citing *Flentje v. First Nat'l Bank*, 340 Ark. 563, 570-72, 11 S.W.3d 531, 537 (2000)).  Because he offers no evidence of direct discrimination, Griffin's sex discrimination claims under both statutes are analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of sex discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination. *See Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 760 (8th Cir. 1998). If the plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See id.* If the employer offers such a reason, the plaintiff must then present evidence sufficient to create a fact issue as to whether the employer's articulated reason is pretextual and to create a reasonable inference that sex was a motivating factor. *See id.*

Assuming Griffin can establish a prima facie case, he has not met his burden to present evidence sufficient to create a fact issue as to whether Tyson's articulated reason for terminating him was a pretext for sex discrimination. Tyson asserts that it terminated Griffin because, at the conclusion of its investigation into TW's harassment charge, it believed – and continues to believe – that Griffin violated its harassment and discrimination policy. Violation of a company policy is a legitimate, nondiscriminatory reason for an adverse employment action. Although Griffin challenges whether Tyson correctly believed that Griffin had violated its harassment policy, that is not the inquiry at the pretext stage. *Arraleh v. County of Ramsey*, 461 F.3d 967, 976 (8th Cir. 2006) ("[T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."). Rather, the question is whether Griffin's sex motivated the decision to terminate Griffin.

Griffin argues that Tyson's proffered reason is pretext because he was disciplined while his female team members who engaged in sexually-suggestive horseplay were not. "While evidence of disparate treatment can of course support an assertion of pretext, the employee or employees with whom a plaintiff wishes to be compared must have been similarly situated to the plaintiff in all relevant respects." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691-92 (8th Cir. 2002). On pretext, this is a rigorous test. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005). Specifically, the "individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000).

Griffin has failed to present sufficient evidence from which a jury could determine that Griffin and the female team members who made sexually-suggestive comments are similarly situated in all relevant respects. The evidence on the record demonstrates that they were not. It is undisputed that Griffin was a line supervisor – a management-level employee – while the female team members were hourly employees. Tyson reasonably asserts that it holds management-level employees to a higher standard of conduct than hourly employees. There is no evidence contradicting that assertion. Furthermore, Tyson's human resources manager for its facilities in the Pine Bluff area, Kathy Hood, testified:

Q. So, on an harassment investigation, the shift HR manager or supervisor, I guess?

A. Yes, ma'am.

Q. Makes a recommendation to the Plant HR Manager?

A. Yes, Ma'am.

Q. And then, from there, that recommendation goes to whom?

A. The Complex HR Manager.

Q. And from there, does it go any further than that?

A. It depends on the kind of investigation it is and whether or not it involves just hourly people or management support or management. Hourly people could stop at that level, but management support and management must go to the HRD.

Q. And that's corporate?

A. Yes, ma'am.

Hood's uncontradicted testimony shows that the final decisionmaker for complaints of sexual harassment against a manager like Griffin was different than for complaints against hourly employees such as his female team members. "When different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects." *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994) (internal quotation omitted).

It is also undisputed that a formal complaint was lodged against Griffin, while no formal charges of harassment were brought against any female team member. As Griffin himself points out in his brief, Tyson's harassment policy states that "[i]nvestigation of any *reported* act of harassment will take place immediately[, and, w]here found to have occurred, appropriate disciplinary action will result."[1] Since no Tyson employee had ever reported any of Griffin's female team members to human resources for their conduct, they are not similarly situated with Griffin.

For his final argument on pretext, Griffin attempts to point out the deficiencies in Bishop-Tatum's investigation. He argues that "Tyson conducted its investigation into TW's sexual harassment complaint in a superficial and perfunctory manner." The fact that the investigation may have been poorly conducted, however, does not show that Tyson intentionally discriminated against

---

[1] Def.'s Ex. 5 (emphasis added).

Griffin. If "[i]t is not unlawful for a company to make personnel decisions based on erroneous evaluations," then it is not unlawful for a company to make a personnel decision based on a flawed investigation. *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 957 (8th Cir. 2001). The place for Griffin to complain about the manner in which Bishop-Tatum conducted her investigation was in Tyson's appeals process – which Griffin failed to use – and not this Court. As long as intentional discrimination is not involved, federal courts lack the power to determine the proper scope of an internal corporate investigation into employee wrongdoing. *Cf. Ring v. Sears, Roebuck & Co.*, 250 F. Supp. 2d 1130, 1138 (D. Minn. 2003) ("[N]either this Court nor Ms. Ring is empowered to dictate the way Sears is to investigate complaints beyond determining whether the company has done so."). Griffin has failed to present evidence sufficient to create a triable issue of fact as to whether Tyson intentionally discriminated against him on the basis of his sex when he was terminated. Tyson is entitled to judgment as a matter of law on Griffin's claims for sex discrimination.

**B.    Hostile Work Environment**

Tyson requests summary judgment on Griffin's claims for hostile work environment under Title VII and the Arkansas Civil Rights Act. "Claims premised under the Arkansas Civil Rights Act of 1993 are analyzed in the same manner as Title VII claims." *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000). The Eighth Circuit has defined a claim for hostile work environment as follows:

> A hostile environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal quotations and further citation omitted)). Hostile work environments created by supervisors or coworkers have the following elements in

>common: (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment. *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005). In addition, for claims of harassment by non-supervisory personnel, [a plaintiff] must show that his employer knew or should have known of the harassment and failed to take proper action. *See Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999). To constitute a hostile work environment, the harassment must be "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris*, 510 U.S. at 21, 114 S. Ct. 367 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

*Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006). The Supreme Court has made the "standards for judging hostility . . . sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84, 141 L. Ed. 2d 662 (1998). "[C]onduct must be extreme to amount to a change in the terms and conditions of the employment," and "complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are insufficient. *Id*. at 788, 118 S. Ct. at 2284. The Eighth Circuit has stated that "[h]ostile work environment harassment occurs when 'the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . .'" *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003) (quoting *Bradley v. Widnall*, 232 F.3d 626, 631 (8th Cir. 2000)).

At his deposition, Griffin testified:

Q. In this, you say you were subjected to a hostile work environment, and the hostility was based on your gender, and the hostile work environment interfered with terms and conditions of your employment. What are you referring to as far as a hostile work environment?

A. For my car to keep continuously, more than once, being vandalized, apparently somebody in the area has a problem with Elbert.

9

> Q. Anything else that you are contending was a hostile work environment?
>
> A. No.
>
> Q. And you say it was continually vandalized. Did that happen more than once?
>
> A. Yes.
>
> Q. What kind of things happened to it?
>
> A. All four tires cut, my convertible top cut up on it, and busted window.
>
> \* \* \*
>
> Q. Do you believe that this was happening because you were a male?
>
> A. I fel that this was happening because I was doing my job.
>
> Q. Doing your job as a supervisor?
>
> A. Yes.

As the above exchange demonstrates, Griffin's claim for hostile work environment fails because he testified that the harassing conduct was related to his status as a supervisor, and not his sex.[2] Because Griffin has failed to create a genuine issue of material fact as to whether he was ever subject to a hostile work environment, summary judgment is granted on Griffin's claims for hostile work environment.[3]

---

[2] It is also undisputed that the vehicles of female supervisors were vandalized as well.

[3] In his response, Griffin argues that his investigation and termination constituted the unlawful harassment. Griffin cannot avoid summary judgment on his disparate treatment claim, however, by re-packaging it as a claim for hostile work environment. *Cf. Maples v. Am. Greetings Corp.*, No. 3:06CV00175, 2007 WL 1089701, at \*7 (E.D. Ark. Apr. 10, 2007) ("If [the plaintiff's discharge] were enough[,] then the door would be open to a claim of hostile work environment every time an employee received a demotion. Such a policy would fall outside 'the substantive contours of the hostile environments forbidden by Title VII . . . .'") (quoting *Faragher*, 524 U.S. at 788, 118 S. Ct. at 2284).

**CONCLUSION**

For the foregoing reasons, Tyson's motion for summary judgment is GRANTED. Document #11. Griffin's complaint will be dismissed with prejudice in a judgment entered separately.

IT IS SO ORDERED this 24th day of May, 2007.

 

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE